## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TAVON KELTON TYRONE HOWARD, SR.,

    Plaintiff,

    v.

WESTERN CORRECTIONAL INSTITUTION ET AL.,

    Defendants.

Civil Action: BAH-24-2438

## MEMORANDUM OPINION

Self-represented Plaintiff Tavon Kelton Tyrone Howard, Sr., ("Plaintiff" or "Howard") filed this civil rights complaint, as amended, pursuant to 42 U.S.C. § 1983. ECF 6. Defendants Western Correctional Institution ("WCI"), Calvin Jones, and CO II Hearn (collectively, "Defendants") moved to dismiss the complaint, or alternatively, for summary judgment in their favor. ECF 19. Howard was advised of his opportunity to respond to the dispositive motion and the risks of failing to do so. ECF 20. Howard has not filed any response to the motion. No hearing is necessary to determine the matters pending. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants' motion, construed as a motion for summary judgment, will be granted.

### I.    BACKGROUND

#### A. Howard's Allegations

In Howard's amended complaint, he alleges that on July 14, 2024, he was directed by CO II Hearn to pack up his belongings to be escorted to restrictive housing for an incident that occurred on July 10, 2024. ECF 6, at 4. Howard contends that this violated COMAR 12.03.01.05 because "one full calendar day ha[d] expired." *Id.* Howard states that his privileges were revoked and his electronics and commissary taken. *Id.* On July 22, 2024, he was served with an infraction. *Id.*

The delay in issuing the infraction, Howard contends, also violated COMAR. *Id.* Howard claims

that his placement on restrictive housing was without due process and violated his rights under the

First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments. *Id.* at 5. Howard seeks

compensatory damages and expungement of the disciplinary infraction from his record. *Id.*

Prior to filing the Court-directed amended complaint, Howard filed a copy of an

Administrative Remedy Procedure ("ARP") Complaint No. WCI-1231-24, which was received by

WCI's ARP Office on July 22, 2024. ECF 4-1, at 2–3. This ARP alleged that on July 14, 2024,

Howard was escorted to restrictive housing and that, as of July 21, 2024, he had not received an

infraction. *Id.*

Howard also filed a copy of a Notice of Inmate Rule Violation ("NOIRV"), dated July 14,

2024, reporting an alleged incident on July 10, 2024. ECF 4-1, at 4. The NOIRV was signed by

LPN Peggy Hixenbaugh, and alleged that the nurse gave Howard a "watch/take" prescription

medication, Buprenorphine, to be placed under his tongue. *Id.* She saw Howard take the

medication out of his mouth and place it in his left hand. *Id.* He was instructed to show the nurse

his hand, but he refused. *Id.* The Buprenorphine dropped to the floor and Howard covered it with

his foot, refused to give it to the nurse, and said he was going to flush it down the toilet. *Id.* As a

result of that exchange, Howard was charged with a number of inmate rule violations including

violating: (1) Rule 100 (Engage in a disruptive act); (2) Rule 114 (Possess a drug, controlled

dangerous substance, or medication requiring staff observation to ingest, or an intoxicant,

excluding alcohol, in a sufficient quantity, or possess packaging materials, suggesting distribution

of or the intent to distribute); (3) Rule 304 (Possess, use, hoard, or accumulate medication without

authorization); (4) Rule 315 (Possess or pass contraband); and (5) Rule 316 (Disobey an order).

*Id.* Howard was served with and signed for the NOIRV on July 22, 2024. *Id.* at 6.

Howard filed a supplement to his complaint attaching a property inventory sheet, correspondence from an attorney declining to represent him, and a handwritten timeline/diary of events occurring from July to September 2024. ECF 10-1. He later filed correspondence wherein he stated that after his disciplinary hearing on the infraction, he filed an appeal, but as of the date of filing had not received a response. ECF 16. Howard attached to the correspondence, among other things, a copy of ARP No. WCI-11652-24 dated September 24, 2024, wherein Howard complained that he went for a disciplinary hearing on July 31, 2024, and filed an appeal but as of the date of the ARP had not received a response. ECF 16-1, at 6. That ARP was dismissed for procedural reasons. *Id.*

### B. Defendants' Motion

Defendants filed a motion seeking dismissal of the complaint or, in the alternative, summary judgment in their favor. ECF 19 (motion); ECF 19-1 (memorandum in support of motion). Defendants argue that the complaint should be dismissed because: (1) the Eleventh Amendment bars Howard's claim against WCI and against Jones and Hearn in their official capacity; (2) Howard has not exhausted his administrative remedies; and (3) Howard fails to state a claim. *Id.*

In support of their motion, Defendants submit: the Hearing Record regarding Howard's inmate rule infraction (ECF 19-2); a declaration of Correctional Hearing Officer Supervisor Scott Rowe (ECF 19-3); and a declaration from Kristina Donnelly, Special Assistant to Director of Patuxent Institution (ECF 19-4).

The Hearing Record demonstrates that after a hearing, Howard was found guilty of violating Rules 111, 304, 315, and 316. ECF 19-2, at 8. He was sanctioned with twenty days of segregation. *Id.* at 9. The Warden affirmed the Hearing Officer's decision and the sanctions

3

imposed. ECF 19-3, at 1–2 ¶¶ 2–3. The Hearing Record indicates that no appeal was received. ECF 19-2, at 12. Officer Rowe avers that Howard did not submit an appeal of the Hearing Officer's or Warden's decision. ECF 19-3, at 2 ¶ 4. Kristina M. Donnelly avers that Howard did not appeal the denial of ARP No. WCI-1231-24 or ARP WCI-1652-24 . ECF 19-4, at 1 ¶ 3.

## II.    STANDARD OF REVIEW

Defendants argue that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. *See* ECF 19-1. A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd* 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Id.* at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Because Defendants filed their motion as a motion to dismiss or, in the alternative, for summary judgment, Howard was on notice that the Court could treat the motion as one for

4

summary judgment and rule on that basis. Accordingly, the Court will review Howard's claims against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of Defendants' motion.

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful that Howard is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Department*

*of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990)).  A court cannot assume the existence of a genuine issue of material fact where none exists.  Fed. R. Civ. P. 56(c).

## III.    DISCUSSION

Dismissal is appropriate here because Howard failed to exhaust available administrative remedies prior to filing his complaint.  The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003) (finding that "the exhaustion provision" of the PLRA "plainly extends" to suits regarding prison conditions).  Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . . ."); *Ross v. Blake*, 578 U.S. 632, 638 (2016) (finding that "a court may not excuse a failure to exhaust").  Consequently, if Howard has not properly presented his claim through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *See Ross*, 578 U.S. at 639.

Administrative exhaustion under § 1997e(a) is not, however, a jurisdictional requirement and does not impose a heightened pleading requirement on the detainee. *Jones*, 549 U.S. at 215–16.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See id.*; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).  The Court

may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore*, 517 F.3d at 725. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any Division of Corrections official or employee. Md. Code Ann., Corr. Servs. ("C.S.") § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is

defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) as "the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[1]  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-

---

[1] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge ("ALJ") denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Finally, the ARP process does not apply to complaints relating to prisoner disciplinary procedures and decisions. COMAR 12.02.28.04(B)(3). If a prisoner is found guilty of a rule violation, the prisoner is entitled to appeal the hearing officer's guilty decision or sanction to the warden of the facility where he or she is incarcerated. COMAR 12.03.01.30(A)(1), (2). If the prisoner does not file a written appeal with the warden within fifteen days of receipt of the hearing officer's decision, he or she is considered to have waived the right to appeal. COMAR 12.03.01.30(A)(3). If the warden affirms the hearing officer's guilty finding or sanction, the prisoner may then appeal to the IGO. COMAR 12.03.01.30(C); *see also* COMAR 12.07.01.05 and 12.07.01.08. When filing this appeal with the IGO, the prisoner is required to include a copy

9

of the initial notice of inmate rule violation, the hearing record, the appeal to the warden, and the warden's response to the appeal. COMAR 12.07.01.04(B)(9)(b).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore* 517 F.3d at 725 (explaining that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). The exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level").

The record evidence demonstrates that contrary to Howard's unverified assertion, he did not appeal the Warden's approval of the discipline hearing officer's decision. Defendants have provided records and declarations demonstrating that Howard did not file such an appeal. Howard has failed to come forward with any evidence to dispute Defendants' evidence. To the extent any of Howard's claims were grievable through the regular ARP process, the record further demonstrates that Howard only initiated the grievance process by filing two ARPs at the facility

10

level. There is no evidence that Howard ever appealed the denial of his institutional ARPs to the Commissioner or to the IGO as required. Therefore, as Howard failed to exhaust administrative remedies, the complaint must be dismissed without prejudice to permit refiling once administrative remedies have been exhausted.[2] The Court need not consider Defendants' additional defenses.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants' motion (ECF 19)—construed as a motion for summary judgment—will be granted and the complaint dismissed without prejudice pursuant to Fourth Circuit precedent. A separate Order follows.

DATED: <u>May 1, 2025</u>

                                    /s/
Brendan A. Hurson
United States District Judge

---

[2] While Defendants have moved for summary judgment, and the Court has considered evidence attached to the motion in reaching the conclusion herein, the Fourth Circuit has advised that dismissal for failure to exhaust should be without prejudice. *See Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases); *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (finding dismissal "mandatory" for failure to exhaust and affirming district court's grant of summary judgment but modifying order to be dismissal without prejudice).